UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| UNITED STATES OF AMERICA, | Case No. 2:11-cr-00064-MMD-CWH |
|---|---|
| Plaintiff, | ORDER |
| v. | (Defendant's Appeal of Detention Order – dkt. no. 127 |
| DAVID DAMANTE, | Defendant's Motion for Order Shortening Time – dkt. no. 128) |
| Defendant. | |

## I. SUMMARY

Before the Court is Defendant David Damante's Appeal of Detention Order ("Appeal") (dkt. no. 127), objecting to the Magistrate Judge's Order to revoke Defendant's pretrial release (dkt. no. 110). Defendant also filed a motion for order shortening time. (Dkt. no. 128.) The motion for order shortening time is denied, but the Court scheduled a hearing on Defendant's Appeal for October 1, 2012. At Defendant's request, the Court permitted Defendant to present evidence through Defendant's testimony after canvassing Defendant as to the effect of his decision to waive his Fifth Amendment rights to testify. The Court continued the hearing to October 22, 2012 to permit the government to respond to Defendant's testimony. Both parties offered testimonies through additional witnesses at the continued hearing.[1]

---

[1] Defendant requested to offer testimonies of two witnesses. However, one of the witnesses, Leah Damante, did not respond to two calls from the Court. Defendant's counsel sent Ms. Damante a text message as well.

The issue before the Court is whether the government has established by clear and convincing evidence that Defendant violated conditions of release and that no condition or combinations of conditions would protect the community against the risk of economic danger posed by the Defendant. The Magistrate Judge determined that the government established both factors. After an evidentiary hearing and a *de novo* review, this Court concurs. The Magistrate Judge's Order of Detention is therefore affirmed.

## II.  BACKGROUND

Defendant David Damante was initially arrested in the District of Arizona on February 23, 2011, pursuant to a warrant from the District of Nevada. Defendant was charged with wire fraud and aiding and abetting. The indictment alleges that Defendant fraudulently obtained $1 million from one victim and $2 million from two other victims through false representations that the funds would be invested and that the victims would receive substantial profits on their investments. The indictment alleges that Defendant used these funds for his personal benefit to purchase a Ferrari, Mercedes Benz, boat, and a trailer. The indictment contains a forfeiture allegation seeking criminal forfeiture of each of these items. At the July 17, 2012, Hearing regarding revocation of pretrial release, the government informed the Court that these items were seized by the government in early 2011 and have been in the custody of the United States Marshal's Service since that time.

## III.  PRETRIAL RELEASE

### A.  Initial Appearance and Pretrial Release

On February 23, 2011, Defendant made his initial appearance before the Hon. David K. Duncan and was temporarily detained pending a detention hearing set for February 25, 2011. Defendant was subsequently released on a Personal Recognizance Bond. Following the release order, the government requested a stay and Defendant remained detained until March 1, 2011.

On March 1, 2011, Defendant was released from custody. On March 9, 2011, Defendant appeared before Magistrate Judge Foley and was released from detention on

a Personal Recognizance Bond. The Bond contained several conditions: (1) Defendant was restricted from traveling outside the Districts of Arizona and Nevada; (2) Defendant was prohibited from contacting co-defendants, alleged witnesses, or potential victims; (3) Defendant was prohibited from obtaining any new financial accounts without prior notification and approval of Pretrial Services; (4) Defendant was instructed to actively participate in a mental health treatment program as directed by Pretrial Services.

Because Damante resided in Paradise Valley, Arizona, he was supervised by the United States Probation Office in the District of Arizona.

### B.    Defendant Violates Terms of Release

In early October 2011, Pretrial Services for the District of Nevada was informed that Mr. Damante obtained two new financial obligations – he attempted to purchase a car and was conditionally approved for a $3 million home loan – without prior approval from Pretrial Services. An Arizona detective conducted research regarding the home loan. According to the detective, the alleged creator of the pre-approval letter for the home mortgage indicated that she had never met Mr. Damante, and upon reviewing the document, stated that it was a fraudulently created document.

On October 1, 2011, Magistrate Judge Foley issued a warrant for Defendant's arrest in response to Defendant's violation of Pretrial Services release conditions. Mr. Damante was arrested in the District of Arizona on October 14, 2011, and made his initial appearance on that date before Magistrate Judge Burns. Magistrate Judge Burns released Mr. Damante on amended conditions of release. The amended terms of release included all previously imposed conditions of release as set by the District of Nevada as well as an additional term:

> Defendant shall not enter into any financial accounts to include bank accounts, money market accounts, stock accounts, credit union accounts, and credit card accounts, and shall also not enter into any financial obligations to include secure transactions, purchase agreements, any financial applications in excess of $1,500, with the exclusion of appropriate legal defense expenditures, without prior notification and approval of Pretrial Services.

///

The next relevant event in this case occurred on October 27, 2011. At that time, Damante requested permission from Pretrial Services to attend his father-in-law's funeral. Before granting the request, Pretrial Services requested specific information about Mr. Damante's travel plans. It learned that Mr. Damante would travel to California from October 28, 2011-November 1, 2011 and would stay at the home of Dr. Scott Zawaba, a friend of his. Dr. Zawaba verified Defendant's plan to stay with him during this time period. Pretrial Services advised Defendant that he must return to the District of Arizona no later than 3:30 PM on Wednesday, November 2, 2011, and that he must check-in in person with Pretrial Services at that date and time. However, on November 2, 2011, Pretrial Services contacted Dr. Zawaba and was informed that Mr. Damante did not stay at his residence while he was in California, nor had he heard from Mr. Damante "since last week." Pretrial Services then contacted Defendant's wife, who informed Pretrial Services that Mr. Damante stayed with her and her mother in Applegate, California all week. Ms. Damante informed Pretrial Services that her husband was on his way back to the District of Arizona.

However, later that day Mr. Damante contacted Pretrial Services and informed that he was in Los Angeles with only $6 in his pocket, and therefore could not make it back to Arizona by 3:30 PM. He then requested that he be allowed to relocate to Laguna Niguel, California for employment purposes. Pretrial Services requested that Mr. Damante provide the contact information of the friend he planned to live with in California and information regarding his potential employer for verification purposes. However, Damante failed to provide this information to Pretrial Services, so his request for modification of pretrial release was not immediately granted.

On November 2, 2011, Damante appeared telephonically before Magistrate Judge Foley on a Hearing on Defendant's Motion to Modify Conditions of Release. Judge Foley denied Defendant's request. At a November 21, 2011, hearing on Defendant's Motion to Modify Conditions of Release, Judge Foley added several conditions to Mr. Damante's release conditions. (Dkt. no. 48.) One of the conditions

1   involves prohibition against contacting individuals who are considered alleged victims
2   and witnesses. (*Id.*)  The Magistrate Judge subsequently found that Damante violated
3   this condition by contacting Troy Hughes after hearing testimony from Mr. Hughes by
4   phone at the July 12, 2012, hearing.[2] (Dkt. no. 133 at 41-47, 63.)

### C. Defendant Attempts to Procure a Loan and in the Process Violates Conditions of Pre-Trial Release

On January 9, 2012, Mr. Damante contacted his supervising officer in the Central District of California and requested permission to obtain a loan for $160,000 "against one of my Ferraris," which had been seized by the government.  The request was denied on January 10, 2012.  On January 11, 2012, Mr. Damante contacted his supervising officer and indicated that he would like to purchase a home in Newport Beach for $5 million.  He requested permission to obtain this new financial obligation.  On January 18, 2012, Mr. Damante's supervision officer contacted him and advised him that his requests to obtain a loan on his seized Ferrari and/or to purchase a home in Newport Beach were both denied.  Pretrial Services informed Mr. Damante that his requests were denied because he failed to provide the Office with verification and documentation regarding the financial transactions.

On January 25, 2012, Mr. Damante contacted his supervising officer in California to request permission to open a bank account at US Bank in order to obtain a $2 million loan.  When the supervising officer requested the name and contact information of Mr. Damante's friend at US Bank whom would provide him the loan, Mr. Damante became agitated and refused to provide the information.  Pretrial Services denied Mr. Damante's loan request.  Mr. Damante later requested permission to obtain a $2.5 million loan through Deutsche Bank.  Because of Mr. Damante's several requests to obtain large financial obligations, on February 9, 2012, the Court amended the terms of Mr.

---

[2]At the hearing, the Magistrate Judge indicated he needed to confirm that Mr. Hughes was one of the individuals who he had instructed Defendant not to contact at the November 2011 hearing. This Court has so confirmed.

Damante's pretrial release, determining that Damante enter into financial transactions in his own true lawful name and must gain approval from the Court, and not Pretrial Services, before entering into any financial obligation over $1,500. (Dkt. no. 60.)

On May 24, 2012, a FBI agent informed Pretrial Services that it had been contacted by a man named Mike Krasowki, Mr. Damante's friend. Krasowski indicated that Damante was in the process of purchasing a home at 33 Vista Montemar, Laguna Niguel for $1.5 million. On June 1, 2012, Mr. Damante's supervising officer in California instructed Mr. Damante to report to Pretrial Services by 4:00 PM to sign the required documents for Pretrial Services to obtain the relevant escrow information, which Mr. Damante had not provided to Pretrial Services. Mr. Damante did not report to the office as instructed.

On June 1, 2012, Pretrial Services submitted a Violation Memorandum to Magistrate Judge Foley and a warrant for Defendant's arrest was issued. Mr. Damante was taken into custody and made an initial appearance on June 8, 2012.[3] He was subsequently released on an Appearance Bond of $50,000. Magistrate Judge Foley added a further term of release: Defendant must sign a release of financial information form.

### D.  Revocation of Pretrial Release

On June 13, 2012, Mr. Damante appeared before Magistrate Judge Hoffman for the Initial Appearance on the Revocation of Pretrial Release. Mr. Damante was ordered released on the same conditions as previously imposed pending the Revocation Hearing. Damante was also ordered to appear before Magistrate Judge Foley on the Revocation Hearing on July 11, 2012. However, Mr. Damante failed to appear. A bench warrant was then issued for his arrest. According to Mr. Damante's supervising officer in

---

[3] A criminal arrest record check conducted on June 8, 2012, in the Central District of California revealed that on March 13, 2012, Defendant was charged in Municipal Court for failing to stop at a stop sign. Mr. Damante did not report this police contact to his supervising officer in California.

California, Mr. Damante traveled to Las Vegas, Nevada on Friday July 13, 2012, and self-surrendered to the United States Magistrate Judge on the outstanding warrant. Mr. Damante then appeared before Magistrate Judge Hoffman on July 16, 2012, and was ordered detained pending the Revocation Hearing before Magistrate Judge Foley.

On July 17, 2012, Magistrate Judge Foley held a hearing on a petition to revoke Defendant's pre-trial release. The government argued that pretrial release should be revoked because Defendant violated two conditions of release (1) that Defendant not apply for credit over $1,500 without the Court's approval, and (2) that Defendant not commit any violations of federal, state, or local law. At the hearing, the government introduced evidence that Defendant applied to refinance another person's home at 33 Vista Montemar in Laguna Niguel, California, and obtained a letter of credit from PB Financial. The government also introduced evidence that in July 2011, Defendant applied for title loan on property that he knew the government had seized from Guaranteed Loans and Robert Johnson.

On July 23, 2012, the Magistrate Judge entered an order revoking the Defendant's pretrial release because Defendant applied for over $1,500 in credit without pre-approval from the Court and because there was probable cause to believe that in July 2011 Defendant violated 18 U.S.C. § 2232 by causing liens to be put on a property seized by the United States.[4]  (Dkt. no. 110.)

Defendant has filed an Objection to the Magistrate Judge's Order revoking pretrial release (dkt. no. 110), asking that the Court reinstate his pretrial release. (Dkt. no. 127.)

**IV.     HEARING ON DEFENDANT'S APPEAL**

What follows is a brief summary of the pertinent evidence that the Court considers in reaching its decision on Defendant's Appeal. The evidence is gleaned from the testimonies presented at the July 12, October 1, and October 22, 2012 hearings.

---

[4] The Pretrial Services report states that Mr. Damante violated the terms of his release in two additional ways: (1) he did not submit to a mental health evaluation as required under the terms of his release and (2) he contacted a potential witness in this case, Mr. Troy Hughes.

### A. Loan Agreement Involving Jewelry as Collateral

Damante testified that he sold his wife's wedding ring to Mark Brooks for about $60,000 in approximately April 2011. He testified he received cash for the sale. Mr. Brooks testified that he entered into a loan agreement with Damante to lend Defendant $50,000 cash for three months with interest and the loan was secured by certain jewelry, including a diamond ring. The government offered Exhibit 6 to evidence this transaction. The date of the loan agreement is May 11, 2011. Mr. Brooks testified that he purchased the jewelry from Damante before the loan matured. This transaction occurred shortly after the condition prohibiting Defendant from obtaining "any new financial accounts" without Pretrial Services approval was imposed. However, it is understandable that Damante may not consider this transaction to be covered under conditions of release.

### B. Loan Involving Personal Properties Seized by the Government

In July 2011, Damante attempted to obtain a title loan from Guaranteed Loans and Robert Johnson in the amount of $125,000.00. Mr. Johnson issued a check to Damante who signed the back of the check, but the check was to be held until the properties were delivered. Mr. Johnson testified he did give Damanate some money to permit him to take care of some expenses and fees, but the $125,000 check was never cashed. In exchange for this loan, Mr. Johnson was to take title to two automobiles (Ferrari and Mercedes) and a boat and trailer ("Personal Properties"). Damante gave Mr. Johnson title documents for these properties and agreed for liens to be placed to secure the loan, and the liens were placed on July 19, 2011. (Exhibit 1.) However, Damante knew the government had seized the properties.

Damante does not dispute the essential facts relating to this transaction, but he claims that the transaction occurred in December 2010. He offers two items of evidence: (1) the date next to Robert Johnson's signature in the loan document (Exhibit 5, page PT-000107) and (2) Damante's testimony about the transaction. He testified that he approached Mark Brooks about a loan using the Personal Properties as collateral in December 2010. Mr. Brooks had seen the Personal Properties and facilitated the

1  transaction which was effectuated in December 2010. Mr. Damante testified he signed
2  the loan document in approximately December 2010 before Mr. Johnson signed it and
3  he was given $5,500. In the summer of 2011, Mr. Brooks contacted Damante about
4  work that needed to be done to the Personal Properties and that Damante owed more
5  money.

6  Mr. Brooks testified that Damante approached him about a title loan using the
7  Personal Properties as collateral within a couple of weeks from the transaction involving
8  the loan on the jewelry in May 2011. He testified that because he does not handle title
9  loans, he referred Damante to Robert Johnson. According to the loan document, the
10 loan is for a term of one year and 3 days. The loan document identified July 19, 2011,
11 as the effective date, August 19, 2011, as the due date of the first monthly payment and
12 July 17, 2012, to be due date of the last payment. Mr. Johnson testified that he had
13 completed the essential terms of the loan on a form on his computer but forgot to
14 change the date of December 30, 2010, next to his signature. Damante testified that all
15 the essential terms were completed when he signed the loan document and there was
16 no missing information on the document. The check for $125,000 is dated July 19,
17 2011. The title documents for the vehicles and boat trailer are dated July 20, 2011. The
18 government produced a copy of an email with a sent date of August 6, 2011[5] that
19 appears to be an amortization schedule for this loan. The scheduled payment was to
20 begin in April 2011. Mr. Johnson testified he pulled the schedule off the Internet to show
21 Damante the monthly principal and interest. While this document does not show the
22 payment would start on August 19, 2011, it more likely supports the conclusion that the
23 loan transaction occurred in July 2011 than in December 2010.

24 Based on the evidence presented, the Court finds that the evidence supports the
25 conclusion that this title loan transaction and the placement of liens on the Personal
26 Properties occurred in July 2011, not December 2010.

---

28 [5] It is not clear whether this date is correct since the document contains another date, August 8, 2011, that appears to be a print date.

9

### C. Application for Credit

Jay Shumbug testified that he was referred to Defendant and initiated contact with Defendant to inquire about investment in oil wells in Pennsylvania. Through the course of their dealings, Mr. Shumbug referred Defendant to PB Financial for Defendant to obtain refinancing on property located at 33 Vista Montemar in Laguna Niguel, California. Mr. Shumbug testified he completed a "Summary Sheet" (Exhibit 4) dated February 22, 2012, stating that the intent of the borrower, Damante, was to take out $1,320,000.00 to purchase a working interest in oil wells in Pennsylvania. When that deal did not go through, they discussed other transactions for the purpose of securing money to invest in the oil wells. These transactions included Damante using other assets, such as Ferrari, Mercedes and boat, and corporate bonds as securities. Mr. Shumbug referred Damante to automobile loan lender, and Shumbug had his banker look into the value of the corporate bonds. Ultimately, Mr. Shumbug did not complete any transaction with Damante.

With respect to the loan on 33 Vista Montemar property,[6] the government offered a loan application identifying Krasowki Trust and Millennia International as borrowers and an email purportedly sent by Damante and containing his photo and contact information to an escrow officer about the loan. Damante does not dispute the photo or the contact information, but he denied obtaining a loan involving the 33 Vista Montemar property and denied that he has any interest or involvement with Millennia International. At the July 12, 2012, hearing, Damante offered a statement, made under penalty of perjury, from Scott E. Zawada, stating that Damante does not have any interest in Millennia International and Zawada's signature, not Damante's, is on the loan

---

[6]The government also offered a copy of a lease agreement involving the same property. (Exhibit 2.) Damante is identified as one of the lessees. He testified that he did not enter into the lease agreement and the signature and initials on the lease are not his. Damante offered the affidavit of Mike Krasowski to support his testimony. (Exhibit B.) Damante also offered the testimony of Dana Martin, who testified he had known Damante for about ten months. He testified he learned from conversations with members of the Krasowski family that Damante was residing on the property with the family's permission as a friend and did not have a lease.

10

application. However, during the October 22, 2012, hearing, Mr. Zawada testified that Damante faxed this statement for him to sign, but he did not sign it because he did not do any deals or any similar transaction using Millennia's name. Even discounting Mr. Zawada's testimony (which is concerning to the Court and will be separately addressed), the Court finds that Mr. Shumbug's testimony, coupled with some of the documents (i.e., the Summary Sheet (Exhibit 4) and the email (Exhibit 3)), are persuasive and demonstrate the Damante did attempt to enter into financial transaction in violation of one of his conditions of release.[7]

## V.  DISCUSSION

The Court reviews the Magistrate Judge's Order under 18 U.S.C. § 3142(e) de novo. *United States v. Eischeid*, 315 F. Supp. 2d 1033, 1035 (D. Ariz. 2003) (citing *United States v. Koenig*, 912 F.2d 1190, 1192-93 (9th Cir.1990)). "The Court must 'review the evidence before the magistrate' and any additional evidence submitted by the parties, 'and make its own independent determination whether the magistrate's findings are correct, with no deference.'" *Id.* (quoting *Koenig*, 912 F.2d at 1193).

The Bail Reform Act of 1984 "requires the release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community." *United States v. Gerbo*, 948 F.2d 1118, 1121 (9th Cir. 1991). "Only in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in [the] defendant's favor." *Id.* (citations omitted).

The government argues that Defendant violated two conditions of release. First, Defendant violated the condition that he not apply for credit over $1,500 without the Court's approval by attempting to obtain a loan with PB Financial. Second, Defendant violated the condition that he not commit any violations of federal, state, or local law by

---

[7] If Damante has no involvement with Millennia and does not have any ownership interest in the 33 Vista Montemar property, his attempt to borrow money using Millennia's name and property that does not belong to him underscores the government's argument that Damante poses a danger to the community.

causing liens to be placed on the Personal Properties seized by the government in violation of 18 U.S.C. § 2232. The Court agrees.

As discussed above, the evidence establishes that Damante attempted to obtain a loan on the 33 Vista Montemar property without approval by Pretrial Services or the Court. The inquiry for this loan was initiated on or about February 22, 2012.[8] The applicable condition of release should be fresh for Damante. In November 2011 the Court modified the condition involving financial transaction to require Pretrial Services approval because Defendant attempted to purchase a car and was conditionally approved for a $3 million home loan without obtaining Pretrial Services approval. (Dkt. no. 48; *see* discussion *supra*, Sect. III(B).) On February 9, 2012, the Court modified this condition yet again to require that Defendant notify and obtain the Court's approval before entering into any financial application in excess of $1,500.00. (Dkt. no. 60.) Yet, Damante wasted no time in violating this condition. In fact, Defendant's conduct throughout his pretrial release shows that he continually attempted to avoid compliance with conditions of release.

18 U.S.C. § 2232(a) renders it a felony for anyone who "knowingly destroys, damages, wastes, disposes of, transfers or otherwise takes any action, for the purpose of preventing or impairing the Government's lawful authority to take such property into its custody or control or to continue holding such property." Section 2232(b) also makes it a felony to knowingly damage, waste or otherwise take any action for the purposing of impairment the court's continuing in rem jurisdiction over property that is the subject of civil forfeiture proceedings. Defendant does not dispute that liens were placed on the Personal Properties or that the Personal Properties were lawfully seized by the government after Defendant was indicted. Defendant's main argument is the transaction that caused the liens to be placed occurred before he was indicted. However, the evidence shows that this transaction occurred in July 2011, after Defendant's indictment

---

[8]The "Summary Sheet" for the 33 Vista Montemar loan is dated February 22, 2012. (Exhibit 4.)

and seizure of the Personal Properties by the government. The Court finds that the government has established probable cause that Defendant violated Section 2232(a) and (b) when he entered into the title loan transaction that caused liens to be placed on the Personal Properties.[9] Defendant has therefore violated the condition of release prohibiting commission another federal crime.

Because of Defendant's violations of conditions of pretrial release, the Court affirms the Magistrate Judge's determination that supervised release should be revoked and that no condition or combinations of conditions would protect the community against the risk of economic danger posed by the Defendant.

## VI.  CONCLUSION

IT IS HEREBY ORDERED that the Magistrate Judge's Order to Defendant (dkt. no. 110) is AFFIRMED.

IT IS FURTHER ORDERED that Defendant's Motion for Order Shortening Time (dkt. no. 128) is DENIED.

ENTERED THIS 24th day of October 2012.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

---

[9] Defendant also cited to a Ninth Circuit decision, *Gasho v. United States,* 39 F.3d 1420 (9th Cir. 1994), to argue that liability under Section 2232 only attached if defendant "removes or destroys the property with the purpose of preventing seizure." As the government correctly pointed out, *Gasho* was decided before the 2000 amendment to statute.